**Cruz Esther RAMOS BAEZ, Plaintiff,**

v.

**Dr. Edwin BOSSOLO LOPEZ, et al., Defendants.**

**No. Civ. 98–1676(PG).**

United States District Court, D. Puerto Rico.

June 30, 1999.

Mayra M. Vásquez–Morales, San Juan, P.R., for plaintiff.

Carlos A. Ramos, San Juan, P.R., Mirta E. Rodríguez–Mora, San Juan, P.R., for defendant.

## OPINION & ORDER

PEREZ–GIMENEZ, District Judge.

Pending before the Court is Co-defendants', Dr. Edwin Bossolo–López' and SIMED's motion for summary judgment (Dkt.# 12) pursuant to Fed.R.Civ.P. 56(c).[1] Co-defendants' ground for a motion for summary judgment is that Plaintiff's tort action is time-barred under Puerto Rico's one-year statute of limitations. Plaintiff, Cruz Esther Ramos–Báez, has filed an opposition to said motion. (Dkt.# 16) Plaintiff contends in its opposition that Co-defendants waived their limitations defense by not asserting it in local court. However, Co-defendants rebut this claim by submitting evidence that they did, in fact, advance a limitations defense in their answer to the complaint. (Reply, Dkt. # 23; Exhibit "A"). Co-defendants' sub-reply alleges that certain out-of-court statements tolled the one (1) year statute of limitations. After careful consideration of both sides' arguments, the Court is ready to rule in favor of Co-defendants.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On November 24, 1988, Cruz Esther Ramos–Báez (hereinafter also referred to as "Plaintiff"), went to Express Emergency Care, Inc. (hereinafter referred to as "EEC" or "Co-defendant") to receive medical treatment for burns suffered on both of her legs. Dr. Edwin Bossolo–López (hereinafter also referred to as "Dr. Bossolo" or "Co-defendant") attended, diagnosed and treated Plaintiff's injury during her visit at EEC.

The next day, November 25, 1988, Plaintiff continued to complain of her injury and traveled to the emergency room at Ashford Presbyterian Community Hospital where she was attended to and subse-

1. In addition, Co-defendant, Ashford Presbyterian Community Hospital, has moved to join the above motion. (Dkt.# 19)

quently discharged the same day. Ashford Presbyterian Community Hospital is also a Co–Defendant in this case.

Continuing to complain of persistent pain, Plaintiff decided to see Dr. Pedro J. Zayas–Santos on November 28, 1988. Dr. Zayas–Santos referred Plaintiff to a burn specialist and surgeon, Dr. Albert Suárez–Domínguez, who ordered that she be hospitalized. Ms. Ramos–Báez alleges that she was not aware of the alleged negligent treatment until she was so informed by Dr. Zayas–Santos and subsequently diagnosed and treated by Dr. Suárez–Domínguez, who operated on her one (1) week after the accident.

On March 21, 1989, Plaintiff's attorney sent a letter to Dr. Bossolo, explaining the details on which the medical malpractice action would be based against him. Dr. Bossolo's malpractice insurer, SIMED, by way of its claims manager, confirmed Dr. Bossolo's receipt of the letter by mailing a notice to Plaintiff's counsel on May 9, 1989. SIMED specifically stated in its letter that an insurance claim number was issued and disclaimed that it solely insured Dr. Bossolo, not EEC.

Plaintiff's attorney also sent a letter dated November 22, 1989 to Ashford Presbyterian Community Hospital, stating the nature of the malpractice claim that was to be instituted against them and the relief requested. However, no evidence of receipt of such letter is reflected in the record.

Finally, Plaintiff commenced an action in the Superior Court of Puerto Rico, Caguas Part, by filing her complaint on July 5, 1990. On November 4, 1996, the Superior Court ordered the case dismissed without prejudice. Plaintiff appealed the decision. On March 19, 1997, the Appellate Circuit Court of Puerto Rico affirmed the lower Court's decision, but amended the sentence by imposing attorney's fees. Plaintiff appealed to the Supreme Court of Puerto Rico. On June 13, 1997, the Supreme Court affirmed the dismissal of the action without prejudice, but removed the imposition of attorney's fees. Finally, Plaintiff filed her complaint in this Court on June 12, 1998.

## II. DISCUSSION

### A. Standard for Statute of Limitations

■ In diversity tort actions, statute of limitations issues are regarded as questions of substantive law. *See Erie v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); and *Daigle v. Maine Medical Center,* 14 F.3d 684, 689 (1st Cir.1994). For this reason, Puerto Rico law governs in the instant case. This tort action was brought pursuant to Puerto Rico's tort statute, art. 1802 of the Civil Code, P.R.Laws Ann. tit. 31, § 5141 (offic.trans.1991).

■ Since the issue on motion for summary judgment is whether the present action is time-barred, the Court must first determine when the statute of limitations period commenced. In Puerto Rico, the applicable limitations period for a tort action or "... for obligations arising from the [defendant's] fault or negligence" under art. 1802, is one (1) year "from the moment the aggrieved person ha[d] knowledge of the injury." P.R.Laws Ann. tit. 31, § 5298(2) (offic.trans.1991).[2] However, the one (1) year period actually begins to run one (1) day after the date of accrual. *Carreras–Rosa v. Alves–Cruz,* 127 F.3d 172 (1st Cir.1997). Furthermore, the Supreme Court of Puerto Rico has held that a plaintiff has *knowledge of the injury* for prescription purposes, when she has "no-

---

**2.** *See DeLeon Otero v. Rubero,* 820 F.2d 18, 19 (1st Cir.1987); *Ramirez de Arellano v. Alvarez de Choudens,* 575 F.2d 315, 318 (1st Cir. 1978); *Hernandez Del Valle v. Santa Aponte,* 575 F.2d 321 (1st Cir.1978); and *Graffals*

*Gonzalez v. Garcia Santiago,* 550 F.2d 687, 688 (1st Cir.1977). *See also Díaz Maldonado v. Lacot,* 89 J.T.S. 14, 6602 (1989); *Delgado Rodríguez v. Nazario de Ferrer,* 88 J.T.S. 63, 5867 (1988).

tice of the injury, plus notice of the person who caused it." *Colón–Prieto v. Geigel*, 15 P.R. Offic. Trans. 313, 330 (1984). In the case at bar, the Plaintiff claims that she did not learn of the alleged malpractice until she was seen on November 28, 1988 by Dr. Zayas–Santos. Dr. Zayas–Santos was the first physician to declare that the alleged malpractice had occurred. Therefore, as of November 28, 1988, the one (1) year limitations period commenced against Co-defendants Dr. Bossolo, Ashford Presbyterian Community Hospital, and their respective insurers, SIMED and DEF Insurance Co. The limitations period would expire on November 28, 1989.

Co-defendants argue that Plaintiff failed to make a claim within the statutory period of time. The Supreme Court of Puerto Rico has discussed at length the foundation upon which statute of limitations rests. "The statutory limitation of actions protects ... a very concrete particular interest: the interest of an individual not to be exposed to old claims, of which memory has been lost, because silence has created an objective and reasonable confidence that the right or power would not by exercised." *Agulló v. ASERCO*, 104 P.R.R. 346, 351 (1975) (citing Luis Díez–Picazo, *La Prescripción en el Código Civil* [Prescription in the Civil Code], 56 (Barcelona, Ed. Bosch 1964) (translation ours)). *See also Rodriguez–Narvaez v. Nazario*, 895 F.2d 38, 43 (1st Cir.1990); *Cintrón v. Commonwealth*, 90 J.T.S. 128, 8231 (1990); *Cf. Silva Wiscovich v. Weber Dental Mfg., Co.*, 1987 WL 448272, 119 P.R. Dec. 550, 562 (1987); *De Jesús Martínez v. Chardón,* 16 P.R. Offic. Trans. 290, 297–98 (1985). The termination of the limitations period indicates the extinction of the right of the injured plaintiff, leaving her "only a natural right which may not be exacted by legal means." *Kery v. American Airlines, Inc.*, 931 F.Supp. 947 (D.P.R.1995) (citing *Cintrón*, 90 J.T.S. at 8231).

■ Once prescription has been raised as an affirmative defense, the burden of proving interruption of the limitations pe-

riod shifts to the plaintiff. *Tokyo Marine & Fire Ins. v. Perez & Cia.*, 142 F.3d 1, 4 (1st Cir.1998). *See Acosta–Quiñones v. Matos–Rodriguez*, 94 J.T.S. 47, 11760 (1994).

## B. Tolling of Statute of Limitations

■ Plaintiff, on the other hand, alleges that the statute of limitations was tolled with respect to her action against Dr. Bossolo and SIMED. Pursuant to Article 1873 of the Puerto Rico Civil Code, there are three ways to toll the limitations period: "Prescription of actions is interrupted by their institution before the courts, by extrajudicial claim of the creditor, and by any act of acknowledgment of the debt by the debtor." P.R.Laws Ann. tit. 31, § 5303 (offic.trans.1991). It is firmly established that once the one (1) year limitations period is interrupted through one of the three tolling methods listed in art. 1873, the period starts to run anew. *Díaz de Diana v. A.J.A.S.*, 110 P.R.R. 602, 606; 10 P.R. Offic. Trans. 602, 606 (1980); *Durán–Cepeda v. Morales–Lebrón*, 112 P.R.R. 776, 779 (1982); *Chardon v. Fumero Soto*, 462 U.S. 650, 661, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983); *Fernandez v. Chardon*, 681 F.2d 42, 49 (1st Cir.1982), *cert. granted*, 459 U.S. 987, 103 S.Ct. 339, 74 L.Ed.2d 382, *cert. denied, Fumero Soto v. Chardon*, 459 U.S. 989, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982), *aff'd, Chardon v. Fumero Soto*, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983). Since Co-defendants have not made any acknowledgment of debt and the local courts' interruption occurred after the alleged running of the statute of limitations, this Court is only concerned with the second method, an extrajudicial claim by Plaintiff.

### 1. Extrajudicial Claim by Plaintiff

■ Tolling of the statute of limitations by an extrajudicial claim occurs with the "unmistakable manifestation of one, who threatened with the loss of his right, expresses his wish not to lose it". *Feliciano v. A.A.A.*, 93 P.R.R. 638, 643 (1966).

Numerous cases have wrestled with defining an "extrajudicial claim." [3] All of these cases have approvingly adopted the definition formulated by the notable Spanish commentator, Luis Díez–Picazo: "In principle, claim stands for demand or notice. That is: it is an act for which the holder of the substantive right, addresses the passive subject of said right, demanding that he adopt the required conduct." *Rodriguez–Narvaez v. Nazario*, 895 F.2d 38, 44 (1st Cir.1990) (quoting Luis Díez–Picazo, *La Prescripción en el Código Civil [Prescription in the Civil Code* ], 130 (Barcelona, Ed. Bosch 1964) (translation ours)).

For the Court to determine whether an extrajudicial claim has been made, the Court must analyze the nature of the out-of-court communications between Plaintiff and Co-defendants. The Supreme Court of Puerto Rico, also embracing Díez–Picazo's definition, has expounded that "the claim may take any conceivable shape." Díez–Picazo, *Id.* at 131; *Acosta–Quiñones v. Matos–Rodríguez*, 94 J.T.S. 47, 11760 (1994); *Zambrana–Maldonado v. Commonwealth*, 92 J.T.S. 12, 9174 (1992). However, an extrajudicial claim must still adhere to certain requirements.

■ In *Galib–Frangie v. El Vocero de Puerto Rico*, 95 J.T.S. 71, 922 (1995), the Court enumerated four (4) criteria for an effective tolling by an extrajudicial claim: (1) timeliness, (2) standing, (3) identity, and (4) suitability of the means used.

■ First, under the timeliness requirement, it is essential that the claim be presented within the limitations period or, otherwise, the plaintiff is time-barred. *Id.* Second, examining the standing and identity requirements, the First Circuit states that:

> The only limitations are that the claim must be made by the holder of the substantive right (or his legal representa-

tive), . . . it must be addressed to the debtor or passive subject of the right, not to a third party, . . . and it must require or demand the same conduct or relief ultimately sought in the subsequent lawsuit.

*Rodriguez–Narvaez v. Nazario*, 895 F.2d 38, 44 (1st Cir.1990) (citations omitted). In addition, the alleged debtor must receive the extrajudicial claim; sending the claim, alone, will not suffice. *Acosta–Quiñones v. Matos–Rodríguez*, 94 J.T.S. 47, 11760 (1994); *Zambrana–Maldonado v. Commonwealth*, 92 J.T.S. 12, 9171 (1992); *Hawayek v. A.F.F.*, 1989 WL 607859, 123 P.R. Dec. 526, 530 (1989); *Díaz de Diana v. A.J.A.S.*, 10 P.R. Offic. Trans. 602 609 (1980). Finally, it is important that the means used to assert her claim is adequate to qualify as an extrajudicial claim for tolling purposes. This requires that the claim be "precise and specific." *Jiménez v. District Court*, 65 P.R.R. 35, 42 (1945); *Fernandez v. Chardon*, 681 F.2d 42, 53 (1st Cir.1982), *cert. granted*, 459 U.S. 987, 103 S.Ct. 339, 74 L.Ed.2d 382, *cert. denied*, *Fumero Soto v. Chardon*, 459 U.S. 989, 103 S.Ct. 343, 74 L.Ed.2d 384 (1982), *aff'd*, *Chardon v. Fumero Soto*, 462 U.S. 650, 103 S.Ct. 2611, 77 L.Ed.2d 74 (1983). As the Supreme Court of Puerto Rico explained, "[t]he letter must do something more than merely inform or remind . . . ." *Kery v. American Airlines*, 931 F.Supp. 947, 953 (D.P.R.1995) (citing *Galib–Frangie*, 95 J.T.S. 71 at 923); and *Zambrana–Maldonado v. Commonwealth*, 92 J.T.S. 12, 9174 (1992).

The Plaintiff supports her extrajudicial claim argument with three exhibits that constitute the only out-of-court communications on record. The Court will thus analyze each document to determine first (1) Does the letter constitute evidence of an extrajudicial claim? and second (2) If

---

**3.** "The phrase, in all honesty, is difficult to define, perhaps due in part to the fact that, viewed abstractly, it encompasses an array of actions as diverse as human conduct itself." *Rodriguez Narvaez*, 895 F.2d 38, 44 (1st Cir.

1990). *See Tokyo Marine*, 142 F.3d, *supra* at 4; *Leon–Nogueras v. Univ. of Puerto Rico*, 964 F.Supp. 585, 587 (D.P.R.1997); and *Rodriguez Montalvo v. Municipality of Arecibo*, 30 F.Supp.2d. 118, 123 (D.P.R.1998).

the answer is in the affirmative, what is its significance with respect to the tolling of the statute of limitations?

### a. May 9, 1989 Letter (See Appendix "A")

SIMED sent a letter dated May 9, 1989 confirming the insurer's receipt of Plaintiff's letter dated March 21, 1989. It is an extrajudicial claim for several reasons. First, the Plaintiff's letter was sent within the limitations period because the limitations period would terminate on November 28, 1989. Second, the claim was, in fact, made by Plaintiff's attorney. Third, the March 21st letter was addressed to the debtor which in this case was Dr. Bossolo. The fact that there is no direct evidence of a letter being sent directly to Dr. Bossolo does not present a problem for this Court. The reason for this is because Dr. Bossolo's malpractice insurer, SIMED, confirmed receipt of Plaintiff's March 21st letter, which Plaintiff had previously sent to Dr. Bossolo. In their May 9th letter, SIMED acknowledged Plaintiff's claim against their insured and assigned a claim number in response to Plaintiff's malpractice claim. Thus, SIMED's letter indirectly acknowledged that a clear and definite claim for malpractice was asserted in Plaintiff's March 21 letter to Dr. Bossolo. Finally, the extrajudicial claim contended was the same claim made in her complaint. Consequently, the March 21st letter constituted an extrajudicial claim, tolled the statute of limitations, and restarted the one year clock anew. The new one-year period began when Dr. Bossolo received notice of the claim, which at the latest, was May 9th 1989.[4]

However, the new statutory period expired on May 9, 1990. That, unfortunately was just under two months shy of when Plaintiff filed her complaint in local court on July 5, 1990.

---

**4.** May 9th, 1989 is the date in which SIMED mailed its acknowledgment of Plaintiff's claim

### b. July 5, 1989 Letter (See Appendix "B")

Although Plaintiff argues that the letter dated July 5, 1989 constitutes an extrajudicial claim, it is not for the following reasons. First, Co-defendants, Bossolo and SIMED, were already on notice since the first interruption of the limitations period. Second and most important, Plaintiff failed to state a claim in this document. Instead, the letter served as a source of information and, thus, did not contain the precision and specificity needed for an extrajudicial claim. All that Plaintiff offered to opposing counsel was a medical report by Dr. Suárez–Domínguez. This letter is not an extrajudicial claim and, as a result, does not toll the statute of limitations. Since this was the only other out-of-court communication with Bossolo and SIMED that Plaintiff had submitted for the record, the letter constituted Plaintiff's last hope of maintaining a claim against Co-defendants Bossolo and SIMED.

### c. November 22, 1989 Letter (See Appendix "C")

Plaintiff sent a letter dated November 22, 1989 to the other Co-defendant, Ashford Presbyterian Community Hospital. Although the letter meets most of the requirements for an extrajudicial claim, it cannot be deemed an extrajudicial claim for tolling purposes. It fails in one important aspect: the record does not reflect that Ashford Hospital ever received the letter. This is a pre-requisite that must be met before even determining whether or not such a claim can be used to toll the statute. Therefore, the one-year clock that commenced on November 29, 1988 was never interrupted in Plaintiff's claim against Co-defendant Ashford Presbyterian Hospital and quietly ran out on November 28, 1989.

---

letter to Dr. Bossolo dated March 21st, 1989.

After careful evaluation of the circumstances surrounding this case, the Court concludes that the Plaintiff's medical malpractice action is time-barred.

Wherefore, Co-defendants' joint motion for summary judgment is hereby **GRANTED.**

**IT IS SO ORDERED.**